IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED IN OPEN COURT
11-15-18
TIMOTHY M. O'BRIEN, CLERK
BY DEPUTY CLERK

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,**<br>**v.**<br>**JOEL SURIEL**<br>**Defendant.** | **Case No. 18-20028-DDC** |

**PLEA AGREEMENT**

The United States of America, by and through Assistant United States Attorney, D. Christopher Oakley, and Joel Suriel the defendant, personally and by and through his counsel, Telesforo Del Valle, Jr., hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count One of the Indictment charging a violation of 18 U.S.C. § 1349, that is conspiracy to commit wire fraud. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count One of the Indictment to which he has agreed to plead guilty is not more than 20 years of imprisonment, restitution, a $250,000 fine, 3 years of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States, as agreed. T.D.V. CO

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

> On December 4, 2015, Overland Park, Kansas Police Department officers were dispatched to an AT&T store located at 6615 W. 135th St. Overland Park,

Kansas on a report of a man fraudulently applying for new cell phone plans using another individual's information. Police officers contacted an AT&T manager who advised the male subject was attempting to activate three lines and purchase three iPhone 6s plus cell phones using a fraudulent social security number and identification.

Responding Officers arrested the male and eventually identified him as Xavier CAMACHO-Guante. CAMACHO-Guante told officers he arrived in Kansas City on December 2, 2015. He said that on December 3, 2015, he purchased an iPhone 6s cell phone from AT&T, 10620 Parrell Pkwy Kansas City, KS 66109, which was in his possession when taken into custody. He also admitted to attempting to purchase two iPhone 6S Pluses at the Overland Park AT&T store that evening using the social security number and passport card with the name Fernando Javier Arteaga Juves. CAMACHO-Guante told officers that his associates were headed to the airport to catch a flight back to New York that same night. Agents went to the Kansas City International Airport and arrested the co-conspirators, identified as Nestor QUIROZ-Hiraldo, Hernan A. CASTRO-Martinez and Liz MIRANDA.

CAMACHO-Guante stated that, as part of the scheme, he enters the Apple or AT&T store and provides stolen account information and requests to add lines, which allows him to purchase new iPhone 6S plus cell phones by paying only the taxes for the phone by getting the two year data service plan which is never paid, thereby leaving the Apple or AT&T store at an approximate loss of $900 per iPhone 6S plus. The victims credit score determines how many lines CAMACHO-Guante adds. CAMACHO-Guante understood no one pays on the two year data service plan and recognizes the stores will bear the loss.

Officers responded to MCI airport where they were able to detain QUIROZ-Hiraldo, CASTRO-Martinez and MIRANDA while waiting for their flight to return to New York. A FedEx office receipt was found in CASTRO-Martinez's pocket showing that a 39.2 pound box was sent priority overnight via FedEx. CASTRO-Martinez admitted to officers that he took the cell phones into the FedEx store in Lee's Summit, Missouri and paid $305 for the cell phones to be shipped to an individual in New York. A search warrant was executed on the package and 30 new sealed iPhones were located inside. All 30 telephones were determined to be fraudulently obtained by this group.

SA Briseno conducted an analysis of data obtained from cell phones belonging to QUIROZ-Hiraldo and CASTRO-Martinez. SA Briseno reviewed the "Whatsapp" chat conversations between CASTRO-Martinez and a user identified as "La Melma" (Whatsapp: 718-902-9927), later identified as the defendant, JOEL SURIEL.

Review of the cell phone data shows that on October 22, 2015, CASTRO-Martinez sent SURIEL a message indicating he had nine "pieces." CASTRO-Martinez subsequently sent another message detailing the quantity, model and

mobile carrier for each of nine iPhones. The following day, SURIEL provided CASTRO-Martinez the prices for each of the nine iPhones --- $5,645.

On October 28, 2015, CASTRO-Martinez asked SURIEL for another price list. The same day SURIEL provided CASTRO-Martinez with a price list broken down by mobile carrier and model and noted twenty dollars would be deducted for opened devices. On November 2, 2015, CASTRO-Martinez sent SURIEL a message stating he has four "pieces" and provide the quantity, model, mobile carrier and whether they were sealed for each of the iPhones. The same day SURIEL responded by advising CASTRO-Martinez to bring them to the store.

On November 26, 2015, CASTRO-Martinez sent SURIEL a message detailing the quantity, model and mobile carrier for seven iPhones. Later the same day, SURIEL directed CASTRO-Martinez to come to "the house." The same day, CASTRO-Martinez then sent SURIEL a message stating he was downstairs. SURIEL responded he was on his way.

On December 1, 2015 (four days before CASTRO-Martinez and the others were arrested in Kansas), SURIEL sent a message to Castro listing the current prices he would pay for iPhones.

SA Briseno reviewed the "Whatsapp" chat conversations between QUIROZ-Hiraldo and a user identified as "Chagui" aka Jose FERMIN-Melo (Whatsapp: 347-606-3555).

On December 4, 2015, QUIROZ-Hiraldo sent FERMIN-Melo a message informing him they were going to send the equipment (Phones later seized from the search warrant for the FedEx shipment recovered during the Kansas investigation). FERMIN-Melo asked if he should send QUIROZ-Hiraldo the address for "La Melma". FERMIN-Melo also directed QUIROZ-Hiraldo to send him the "emai" (believed to be 'IMEI' International Mobile Equipment Identity) because he does not want to have any problems with "La Melma".

On July 29, 2017, an Undercover Agent (UCA) conducted a controlled delivery of five iPhone 7 Plus 32GB and five iPhone 7 Plus 128GB to SURIEL at Wyckoff Wireless, a store SURIEL managed in New York. These iPhones were obtained fraudulently in the state of Kansas (Refer to Olathe Kansas Police Department case 17-0009690, AT&T case related to OPPD arrest 2017-03-04-004437 and Sprint case 5172007). The UCA arrived at Wyckoff Wireless and asked for "La Melma". The employee asked on behalf of whom, which the UCA responded they were there on behalf of the CI. SURIEL approached the front of the store, greeted the UCA and invited them into the backroom. SURIEL and a female employee sorted through the bag containing the iPhones. SURIEL told the UCA he no longer purchases iPhone 6s and directed the UCA to tell "him" (referring to the CI) only iPhone 7 and newer. The female employee asked SURIEL about the iPhone 6s's. SURIEL stated "he" (unknown 3rd party) does not want those phones and he does not know why. The iPhones sold by the UCA were scanned by the

female employee who was using a device connected to a laptop. SURIEL told the UCA he would pay $5,500 for the iPhones they brought in. The retail price for the iPhones at the time of sale was $869 for the iPhone 7 Plus 128GB and $769 for the iPhone 7 Plus 32GB for a total retail price of $8,190.

3. **Application of the Sentencing Guidelines.** The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

(a) to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment;

(c) to recommend a sentence at the low end of the applicable Guideline range; and

(d) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty; and

(e) in the event the United States requests the Court to consider reducing the defendant's sentence for his substantial assistance, as discussed below, to allow the defendant to argue for a greater reduction for that substantial assistance than the United States recommends.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony given before a grand jury or other tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all

criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6. **Defendant's Agreements.** The defendant agrees to cooperate fully and truthfully with the United States. Specifically, the defendant agrees:

(a) to provide truthful, complete, and accurate information and testimony in the trial of this matter, before any grand jury proceeding, or in any related hearing;

(b) to provide all information concerning the defendant's knowledge of, and participation in the offenses charged in the Indictment and all related conduct; and

(c) in the event the United States requests the Court to consider reducing the defendant's sentence for his substantial assistance, as discussed below, to not request a downward departure for anything other than his substantial assistance, and to not request a variance for any reason under 18 U.S.C. § 3553(a); and

(d) the defendant further agrees that the money he provided to an undercover government agent as part of the the controlled sale of cellular telephones at Wycoff Wireless in New York, that is currently in the possession of the government, will be applied to restitution in this case.

7. **Substantial Assistance.** The defendant acknowledges that he has not yet provided substantial assistance within the meaning of U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). He also acknowledges and understands that the determination as to whether he has provided substantial assistance and whether a U.S.S.G. § 5K1.1 motion will be filed are left entirely and exclusively within the discretion of the United States. If the United States makes a determination that he has provided substantial assistance, the United States shall request that the Court consider reducing the sentence he would otherwise receive under the applicable statutes and/or sentencing guidelines, pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and U.S.S.G. § 5K1.1.

8. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence he will receive.

9. **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

(a) Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change. Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns. The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

(b) Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c) Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

(d) Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(e) Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f) Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g) If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h) Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i) Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j) Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k) Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l) Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

10. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

11. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the

burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

12. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

13. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without

limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

14. **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

15. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

16. **Deportation Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which he is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty, regardless of any immigration

consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

17. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

18. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and that this Plea Agreement embodies each and every term of the agreement between the parties.

19. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

______________________________ Date: 11/15/18

D. Christopher Oakley
Assistant United States Attorney
KS Bar No. 19248
500 State Avenue, Suite 360
Kansas City, KS 66101
Ph. 913-551-6730
Fax 913-551-6754
Chris.oakley@usdoj.gov

______________________________ #0643 Date: 11-13-18

Scott C. Rask
Assistant United States Attorney
Supervisor

Joel Suriel
Defendant

Date: 11-15-18

Ted Del Valle
De Valle & Associates
445 Park Avenue
New York, New York 10022
212.481.1900
Fax 212-481.4853
Counsel for Defendant

Date: 11-15-18